# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| Synergy Drone LLC, | |
| Plaintiff, | Civil Action No. 1:17-cv-00243-LY |
| v. | The Honorable Judge Lee Yeakel |
| Parrot S.A., Parrot Drones S.A.S., and Parrot, Inc., | |
| Defendants. | |

**DEFENDANTS PARROT S.A.'S AND PARROT DRONES S.A.S' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION PURSUANT TO FED. R. CIV. P. 12(b)(2)**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................................1

ARGUMENT .................................................................................................................................2

I.     SYNERGY DRONE'S STREAM-OF-COMMERCE THEORY REMAINS DEFICIENT. ...................................................................................................................2

II.    SYNERGY DRONE'S ALTER EGO THEORY REMAINS DEFICIENT. .......................7

III.   SYNERGY DRONE'S FEDERAL LONG-ARM STATUTE THEORY REMAINS DEFICIENT. ...................................................................................................9

IV.   JURISDICTIONAL DISCOVERY IS NOT WARRANTED. ..........................................10

CONCLUSION ............................................................................................................................10

# **TABLE OF AUTHORITIES**

**Page**

**Cases**

*3D Sys., Inc. v. Aarotech Labs., Inc.*,
 160 F.3d 1373 (Fed. Cir. 1998) ............................................................................................. 3, 7

*Asahi Metal Industry Co., Ltd. v. Superior Ct. of Calif., Solano Cnty.*,
 480 U.S. 102 (1987) ............................................................................................................... 3, 7

*Asarco, Inc. v. Glenara, Ltd.*,
 912 F.2d 784 (5th Cir. 1990) ...................................................................................................... 1

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) .................................................................................................................... 8

*Berry v. Salter*,
 179 F. Supp. 2d 1345 (M.D. Ala. 2001) ................................................................................ 3, 4

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*,
 21 F.3d 1558 (Fed. Cir. 1994) ........................................................................................... 1, 4, 5

*Daimler AG v. Bauman*,
 134 S. Ct. 746 (2014) ................................................................................................................ 10

*Icon Building Sys., LLC v. Premier Steel Buildings, Inc.*,
 No. W-08-CA-157, 2008 WL 11334518 (W.D. Tex. Sept. 30, 2008) ....................................... 1

*Int'l Shoe Co. v. Washington*,
 326 U.S. 310 (1945) .................................................................................................................... 2

*J. McIntyre Machinery, Ltd. v. Nicastro*,
 564 U.S. 873 (2011) ....................................................................................................... 2, 3, 5, 6, 7

*Klinghoffer v. S.N.C. Achille Lauro Ed*,
 937 F.2d 44 (2d Cir. 1991) .......................................................................................................... 1

*Minn. Min. & Mfg. Co. v. Eco Chem, Inc.*,
 757 F.2d 1256 (Fed. Cir. 1985) ................................................................................................... 8

*Pohlmann v. Bil-Jax, Inc.*,
 176 F.3d 1110 (8th Cir. 1999) ..................................................................................................... 1

*Polar Electric Oy v. Suunto Oy*,
 829 F.3d 1343 (Fed. Cir. 2016) ................................................................................................... 4

*Prasco, LLC v. Medicis Pharm Corp.*,
 537 F.3d 1329 (Fed. Cir. 2008) ................................................................................................... 1

*Sunshine Distr'n, Inc. v. Sports Auth. Mich. Inc.*,
   157 F. Supp. 2d 779 (E.D. Mich. 2001) .......................................................................... 5, 6, 10

*Tex. Mut. Ins. Co. v. Integrated Claims Sys's, LLC*,
   No. A-13-cv-128-LY, 2013 WL 11311776 (W.D. Tex. Apr. 29, 2013) ................................... 10

Defendants Parrot S.A. and Parrot Drones S.A.S. ("Parrot Drones") respectfully file this reply memorandum in support of their Motion to Dismiss Plaintiff Synergy Drone LLC's ("Synergy Drone") Amended Complaint for lack of personal jurisdiction.

## INTRODUCTION

Faced with insurmountable deficiencies in each personal jurisdiction theory it asserts, Synergy Drone's opposition simply repeats the conclusory, unsubstantiated allegations in the Amended Complaint and blithely ignores both the legal arguments presented in Parrot's motion as well as the *evidence* demonstrating the factual inaccuracy of these allegations, even while insisting that its allegations remain "uncontroverted." In so doing, Synergy Drone ignores several well-settled jurisdictional principles, namely: (1) personal jurisdiction is evaluated at *the time the complaint is filed*, and does not encompass an indeterminate period preceding the lawsuit[1]; (2) Synergy Drone bears the burden of establishing personal jurisdiction as to *each distinct defendant*, yet *still* lumps Parrot S.A. and Parrot Drones together under the amalgam

---

[1] Synergy Drone inaccurately portrays *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1563 (Fed. Cir. 1994) as elucidating some sort of "continuing tort" exception to this rule. Dkt. 46 at 4 n.1. In that case, the Federal Circuit, as a matter of "***Fourth Circuit law***," rejected an "***evidentiary argument***" as to whether a declaration obtained "***after***" the complaint was filed could be considered as "***evidence***." *Id.* at 1561-63 (emphasis added). Thus, *Beverly Hills Fan* was silent as to whether a lengthy period of *inactivity* preceding a lawsuit is jurisdictionally relevant and provided no reason to deviate from assessing personal jurisdiction at the time the complaint is filed. *See* Dkt. 44 at 14; *Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784, 787 n.1 (5th Cir. 1990); *see also Klinghoffer v. S.N.C. Achille Lauro Ed*, 937 F.2d 44, 52 (2d Cir. 1991) ("[P]ersonal jurisdiction depends on the defendant's contacts with the forum state at the time the lawsuit was filed."); *Pohlmann v. Bil-Jax, Inc.*, 176 F.3d 1110, 1112 (8th Cir. 1999); *Icon Building Sys., LLC v. Premier Steel Buildings, Inc.*, No. W-08-CA-157, 2008 WL 11334518, at *3 (W.D. Tex. Sept. 30, 2008). This sensibly ensures that personal jurisdiction and subject matter jurisdiction are evaluated contemporaneously, as the "proper focus in determining [subject matter] jurisdiction are the facts existing at the time the complaint . . . was filed." *Prasco, LLC v. Medicis Pharm Corp.*, 537 F.3d 1329, 1337 (Fed. Cir. 2008) (internal quotation marks and citations omitted). In any event, however, this issue relates, at most, to the activities of ***Parrot, Inc.***, not Parrot S.A. or Parrot Drones.

"Parrot FE"; and (3) since Synergy Drone's personal jurisdiction allegations have been ***controverted***, it cannot rest on unadorned allegations. In tandem, these principles demonstrate that Parrot S.A.'s and Parrot Drones' motion should be granted.

## ARGUMENT

### I. SYNERGY DRONE'S STREAM-OF-COMMERCE THEORY REMAINS DEFICIENT.

It bears repeating that even under the stream-of-commerce theory, the touchstone of personal jurisdiction remains the same: minimum contacts with the forum state. *See* Dkt. 44 at 5; *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Thus, as Parrot S.A. and Parrot Drones have already pointed out, the Supreme Court, in its most recent decision addressing the scope of the stream-of-commerce theory, has sensibly noted that the theory cannot be used to end-run the minimum contacts requirement:

> It is notable that the . . . [c]ourt appears to agree . . . it could not find that [Defendant] had a presence or minimum contacts in this State . . . that would justify a New Jersey court to exercise jurisdiction . . . ***the stream-of commerce metaphor cannot supersede either the mandate of the Due Process Clause or the limits on judicial authority that Clause ensures***.

*J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 887 (2011) (emphasis added) (internal quotation marks and citations omitted); Dkt. 44 at 13. Despite the prominence Synergy Drone places on the stream-of-commerce theory, this point goes ***entirely*** unaddressed; indeed, *Nicastro* is not even mentioned in the opposition. Because Synergy Drone has still made no effort to identify any minimum contacts that Parrot S.A. and Parrot Drones have with this state, its stream-of-commerce theory should be rejected on that basis alone.

Likely cognizant of this glaring flaw, Synergy Drones continues to impermissibly conflate its stream-of-commerce and alter ego theories by claiming that because Parrot S.A. and Parrot Drones "set up" Parrot, Inc. as a "subsidiary in the United States," the contacts of Parrot,

2

Inc. can be imputed to Parrot S.A. and Parrot Drones.  Dkt. 46 at 5, 9; Dkt. 44 at 9-10.  However, Synergy Drones does not point to any case that embraces this approach to the stream-of-commerce theory.  "[T]he corporate form is not to be lightly cast side . . . unless, *specific, unusual* circumstances call for an exception . . . ."  *3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1380 (Fed. Cir. 1998) (emphasis added).  Unless the corporate veil is pierced, and it should not be—*see* Section II, *infra*—the activities of Parrot, Inc. have no relevance to whether Parrot S.A. and Parrot Drones "*particip[ated]*" in the "*regular and anticipated* flow" of the accused products *to Texas*.  *Asahi Metal Industry Co., Ltd. v. Superior Ct. of Calif., Solano Cnty.*, 480 U.S. 102, 117 (1987) (Brennan, J., concurring in part).

In view of *Asahi* and *Nicastro*, Synergy Drone clearly has not established a *prima facie* case of personal jurisdiction over either Parrot S.A. or Parrot Drones.  Synergy Drone asserts that neither Parrot S.A. or Parrot Drones "contest that they 'operated' and 'programmed' the Parrot.com website," from which United States sales are made.  Dkt. 46 at 7.  Synergy Drone has conveniently ignored the *evidence* Parrot S.A. and Parrot Drones cited in their Motion emphatically making clear that "Parrot, Inc. has *exclusive* responsibility for *operation* of that website."  Dkt. 44 at 10 (emphasis added) (citing Dkt. 25-1 ¶¶ 7-8); *see also* Dkt. 44 at 12 ("Welcome to parrot.com website . . . *published by Parrot, Inc.*, a New York corporation . . . ." (citing Dkt. 25-1 at 5, 9)).  This evidence, submitted in connection with the first motion to dismiss that was filed and later mooted by the amended complaint, was cited and explicitly relied upon by Parrot S.A. and Parrot Drones in their Motion to Dismiss currently before this Court, *see* Dkt. 44 at 10, 12 (citing Dkt. 25), and can accordingly be properly considered.  Synergy Drone has proffered no competing evidence, as required, or any response for that matter, on this issue.  *See Berry v. Salter*, 179 F. Supp. 2d 1345, 1347-48 (M.D. Ala. 2001) ("[W]hen allegations in the

3

complaint have been controverted by evidence such as affidavits, the plaintiff must present more than conclusory statements, unsupported by evidence, to establish personal jurisdiction.").

Synergy Drone's defense of its stream-of-commerce theory rests almost entirely on the decision in *Beverly Hills Fan*,[2] as it asserts that "the Parrot FE have failed to identify a single substantive fact that separates this case from *Beverly Hills Fan*." Dkt. 46 at 10; *id.* at 8-9. Once again, however, Synergy Drone overlooks the distinguishing features of *Beverly Hills Fan* that Parrot S.A. and Parrot Drones underscored in their Motion:

> [I]n *Beverly Hills Fan* . . . the Federal Circuit found that personal jurisdiction was proper . . . because the ***defendants*** made ***ongoing and continuous shipments*** of the accused infringing product ***into Virginia*** . . . .

Dkt. 44 at 7 (emphasis added) (internal quotation marks and citations omitted). Thus, *Beverly Hills Fan* is completely inapposite for two crucial reasons. First and foremost, Parrot S.A. and Parrot Drones are not ***participants*** in the relevant stream of commerce. *See id.* at 8-10. Synergy Drone argues that Parrot S.A. and Parrot Drones are attempting to evade personal jurisdiction by "pointing to the activities of the U.S. distributor" as the defendant did in *Beverly Hills Fan*. Dkt. 46 at 11. But Synergy Drone is erroneously equating Parrot, Inc. to a mere United States distributor, which it is not. It is instead an independent company that makes all United States sales decisions and "in ***connection*** with its United States distributors, determines the destinations of products sold in the United States." Second Floret Decl. ¶ 5 (emphasis added). In other words, Parrot S.A. and Parrot Drones are ***twice*** removed from the stream of commerce; once

---

[2] *Polar Electric Oy v. Suunto Oy*, 829 F.3d 1343, 1345 (Fed. Cir. 2016), which Synergy Drone cited in its response to Parrot S.A.'s and Parrot Drones' initial motion to dismiss as support for its belief that it met its *prima facie* personal jurisdiction burden, Dkt. 37 at 1-2, is not cited or mentioned once in the opposition, likely for good reason. That case confirms that the exercise of personal jurisdiction over Parrot S.A. and Parrot Drones based on the stream-of-commerce theory is improper. *See* Dkt. 44 at 12.

because Parrot, Inc. is exclusively responsible for United States sales, and a second time because Parrot, Inc. coordinates with United States distributors to sell the accused products. Thus, this is not a case where Parrot S.A. and Parrot Drones are simply "plac[ing] [accused] products in the United States via an established distribution channel," Dkt. 46 at 10. Any such placement is done by Parrot, Inc., meaning that, despite Synergy Drone's contrary assertion, it is required to do "more." *Beverly Hills Fan*, 21 F.3d at 1565; Dkt. 46 at 9.

Equally fatal to Synergy Drone's attempt to analogize this case to *Beverly Hills Fan* is that the requisite connection to *the forum state* is lacking. In *Beverly Hills Fan*, fifty-two accused products "were present in Virginia . . . reflecting an ongoing relationship with" the forum state. 21 F.3d at 1564. By contrast, Synergy Drone has not even alleged, let alone shown, a comparable level of shipments of the accused products to Texas. The most the Amended Complaint offers on this front is that "[t]he accused Parrot drones [were] sold . . . through distribution channels in the U.S., including the State of Texas and this judicial district." Dkt. 36 ¶ 15. But this allegation is clearly directed to the United States as a whole, as opposed to the state of Texas specifically. Synergy Drone's failure to even *allege* that the accused products were shipped to Texas with regularity by any of the Parrot entities forecloses its ability to rely on the stream-of-commerce theory; "[t]hese facts may reveal an intent to serve the U.S. market, but they do not show that [Defendants] purposefully availed [themselves] of the [Texas] market." *Nicastro*, 564 U.S. at 886; *see also* Dkt. 44 at 10. Synergy Drone confirms the virtually nonexistent connection the accused products have with Texas with its tepid statement that "at least one actual sale has occurred here." Dkt. 46 at 9; *id.* at 5. *One* sale is a far cry from the "fifty-two" sales evincing "ongoing and continuous shipments" that largely informed the Federal Circuit's decision in *Beverly Hills Fan*. 21 F.3d at 1563-64. *Sunshine Distr'n, Inc. v. Sports*

5

*Auth. Mich. Inc.*, 157 F. Supp. 2d 779, 788 (E.D. Mich. 2001) is of no help to Synergy Drone, as that case did not even evaluate a stream-of-commerce theory of personal jurisdiction, but instead assessed specific personal jurisdiction based on "Rule 4(k)(2) [the] federal long-arm statute."[3] (internal quotation marks omitted).  Thus, the contacts with the "United States" as a whole, instead of a particular forum state, were evaluated.  *Id.* at 789.  Synergy Drone cannot utilize such an analysis because "intent to serve the U.S. market" is not enough to establish personal jurisdiction based on the stream-of-commerce theory.  *Nicastro*, 564 U.S. at 886.

Synergy Drone continues to place undue emphasis on the past activity of Parrot, Inc. in this State.  Dkt. 36 ¶ 14; Dkt. 46 at 5-6, 9.  Again, this is relevant, if at all, to the alter ego theory Synergy Drone has asserted, which remains infirm.  *See* Section II, *infra*.  In any event, however, as Parrot S.A. and Parrot Drones have already noted, Synergy Drone drastically overstates even the past presence of Parrot, Inc. in Texas.  *See* Dkt. 44 at 9 n.2 ("To the contrary, Parrot, Inc. has no current business operations or remote staff working in Austin.").  Although a portion of sales and marketing activities for the company were based in Austin, Texas for a short time, all of those activities were relocated before 2009, and have never resumed in this District since.  *See* Planchon Decl. ¶¶ 4-5.  In other words, Parrot, Inc. ceased its activities in this District **at least three years** before the accused products were even launched—2012—and the alleged continuing tort began, foreclosing Synergy Drone from relying on this past activity for any reason.  *See* Dkt. 46 at 7.

Ultimately, Synergy Drone tries to cherry-pick a single part of Justice Brennan's concurrence in *Asahi* when it argues that Parrot S.A. and Parrot Drones "knew the likely

---

[3] Notably, Synergy Drone cannot properly rely on the federal long-arm statute to establish personal jurisdiction over Parrot S.A. or Parrot Drones.  *See* Section III, *infra*.

destination of the products would include the State of Texas." Dkt. 46 at 9.  It ignores Justice Brennan's instruction that the "aware[ness]" Synergy Drone refers to is predicated on "the regular and anticipated flow" of the accused products to the forum state, something Synergy Drone has not demonstrated.  *Asahi*, 480 U.S. at 116-17 (Brennan, J., concurring in part).  Synergy Drone's argument would subject every large, international corporation to personal jurisdiction in every *single judicial district* simply because it suspected, by virtue of the scale of its business, that its products were likely to be sold throughout the United States.  Such a limitless, unchecked exercise of personal jurisdiction vitiates the Due Process Clause, is unsupported, and illustrates why a stream-of-commerce theory is of no help to Synergy Drone.  *See Nicastro*, 564 U.S. at 883 ("[T]he premises of lawful judicial power . . . make clear that it is the defendant's *actions*, not his expectations, that empower a State's courts to subject him to judgment." (emphasis added)).

## II.   SYNERGY DRONE'S ALTER EGO THEORY REMAINS DEFICIENT.

Synergy Drone employs the same ineffective strategy with respect to its alter ego theory, again repeating its inadequate allegations without engaging Parrot S.A.'s and Parrot Drones' responses to those allegations, and thus, has failed to disturb the general presumption that "the corporate entity should be recognized and upheld."  *3D Sys. Inc.*, 160 F.3d at 1380.  Synergy Drone first contends that Parrot S.A. and Parrot Drones "admit" that actual sales in the United States were conducted "through Parrot, Inc." and that this purported admission shows that Parrot, Inc. is an agent and alter ego of both Parrot S.A. and Parrot Drones.  Dkt. 46 at 1, 11.  But no such admission was made, especially considering the numerous pieces of evidence Parrot S.A. and Parrot Drones submitted showing that Parrot, Inc. operates as a distinct and independent entity.  *See* Dkt. 25-1 ¶¶ 9-12.  Instead, Parrot S.A. and Parrot Drones merely quoted the Amended Complaint verbatim, *see* Dkt. 44 at 19 (citing Dkt. 36 ¶ 32), to illustrate the

inadequacy of Synergy Drone's federal long-arm statute theory of personal jurisdiction. The standalone "conclusory statement[]," that sales are made "through" Parrot, Inc., however, was not conceded by any means, and, without supporting facts, need not be credited. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Yet again, Synergy Drone fails to grapple with the defects in the alter ego theory that Parrot S.A. and Parrot Drones have demonstrated. Synergy Drone was placed on notice that it "did not proffer a single allegation as to how ***Parrot Drones*** has failed to observe corporate formalities," yet does not even address this issue in its opposition, which, by itself, ensures that personal jurisdiction cannot be exercised over Parrot Drones based on an alter ego theory. Dkt. 44 at 14 (emphasis in original). And Synergy Drones "concurs," as it must, that one-hundred percent ownership, by itself, is not enough to pierce the corporate veil, but maintains that its "uncontroverted allegations" warrant piercing the corporate veil, again ignoring the refutations Parrot S.A. and Parrot Drones offered. Dkt. 46 at 14. Most critically, the ***evidence*** that Parrot, Inc. observes four separate corporate formalities was cited as "buttress[ing] the recognition of [Parrot, Inc.] as a separate entity." *Minn. Min. & Mfg. Co. v. Eco Chem, Inc.*, 757 F.2d 1256, 1265 (Fed. Cir. 1985); Dkt. 44 at 16-17 (citing Dkt. 25-1 ¶¶ 9-12). Synergy Drone does not address ***any*** of these corporate formalities. Nor does it address the fact that it has not ***properly*** shown that Parrot, Inc. is grossly undercapitalized, *see* Dkt. 44 at 15-16, that the Parrot entities maintain separate insurance on accounts receivable, *see id.* at 15, and that a parent company's occasional exercise of budgetary control over a subsidiary does not warrant piercing the corporate veil. *See id.* That the Parrot entities have "common corporate leadership" is entirely unremarkable, and characteristic of all well-run corporate families. Dkt. 46 at 14-15.

Rather than engage each of these facts which emphatically undermine its claim of alter ego or agency, Synergy Drone casts baseless aspersions on the Second Declaration of Ludovic Floret simply because Mr. Floret *accurately reported facts completely consistent with the Amended Complaint*.  *See* Dkt. 46 at 13 n.7.  Synergy Drone itself only alleged that Mr. Planchon "also was until at least June 2016, a Director of Parrot, S.A.," Dkt. 36 ¶ 21, and Mr. Floret confirmed that subsequent to June 2016, Mr. Planchon no longer "*has* [any] responsibilities at Parrot S.A. or Parrot Drones S.A.S." Dkt. 25-1 ¶ 12 (emphasis added).  This statement was, as expected, made in the present tense because Synergy Drone is not suing Parrot S.A. and Parrot Drones as they were constituted in June 2016, but is instead suing them *now*.  What Synergy Drone derisively labels as "over-reliance on technical correctness," Dkt. 46 n.7 can more aptly be called "accurately reporting facts."

Synergy Drone also improperly attempts to infer an alter ego relationship based on a Delaware lawsuit that all three Parrot entities filed, opining: "If the Parrot FE do not have . . . oversight and control over, Parrot, Inc.  . . . what basis could they have for standing in that litigation?"  Dkt. 46 at 15.  The answer is simple and confirmed by the Complaint in that lawsuit: *all three Defendants* were threatened with patent infringement and accordingly filed a suit for declaratory relief "to lift the cloud created by the imminent threat of a lawsuit."  Dkt. 36-6 at 7.  That all three Defendants filed suit together shows nothing other than an unsurprising alignment of interests.  Synergy Drone's attempt to rely on this lawsuit as a jurisdictional basis is nonsensical and chills the vindication of intellectual property rights.  *See* Dkt. 44 at 16.

### III. SYNERGY DRONE'S FEDERAL LONG-ARM STATUTE THEORY REMAINS DEFICIENT.

Parrot S.A. and Parrot Drones demonstrated that the bulk of the allegations Synergy Drone makes based on the federal long-arm statute are untethered to the accused products, and

9

thus are only relevant to *general* jurisdiction.  *See* Dkt. 44 at 18-20.  Synergy Drone does not dispute this characterization, and thus must make the exacting showing that Parrot S.A. and Parrot Drones are "essentially at home" in the United States based on "constant and pervasive contacts."  *Daimler AG v. Bauman*, 134 S. Ct. 746, 751 (2014).  There can be no real dispute that the sporadic and tenuous contacts alleged—including the "isolated" lawsuit in Delaware, Dkt. 46 at 17—do not meet the post-*Daimler* general jurisdiction standard.[4]  The fact that a foreign company predictably "view[s] the United States as an important market," *id.* at 16 n.8, does not alter this conclusion in light of *Daimler's* stringent definition of general jurisdiction.

## IV.  JURISDICTIONAL DISCOVERY IS NOT WARRANTED.

Since Synergy Drone has not addressed the majority of the deficiencies in the personal jurisdiction theories it asserts, it is not entitled to jurisdictional discovery and should not be allowed to embark on a burdensome "fishing" expedition at the expense of two corporations headquartered in a different country.  *Tex. Mut. Ins. Co. v. Integrated Claims Sys's, LLC*, No. A-13-cv-128-LY, 2013 WL 11311776, at *5 (W.D. Tex. Apr. 29, 2013);  Dkt. 44 at 20.  In particular, Synergy Drone seeks to examine "sales, marketing, and advertising records," Dkt. 46 at 20, even though it never explains how or why these broad categories of documents are relevant to any of the jurisdictional theories it asserts.  Indeed, these documents are unlikely to shed any light on the relationship between the various Parrot entities and their corporate formalities.  This Court should accordingly reject Synergy Drones' request.

## CONCLUSION

This Court should dismiss Parrot S.A. and Parrot Drones for lack of personal jurisdiction.

---

[4]  Because *Sunshine Distribution* centered on whether ***specific jurisdiction*** was proper under the federal long-arm statute based on, among other facts, the filing of trademarks relevant to an unfair competition claim, it is inapplicable.  *See Sunshine*, 157 F. Supp. 2d at 789.

10

Dated:  October 31, 2017

Respectfully Submitted,

 */s/ B. Russell Horton*
B. Russell Horton
(rhorton@gbkh.com)
GEORGE BROTHERS KINCAID &
  HORTON, LLP
114 W. 7th Street, Ste. 1100
Austin, Texas 78701
Tel.: (512) 495-1400
Fax: (512) 499-0094

Matthew Traupman (*pro hac vice*)
(matthewtraupman@quinnemanuel.com)
James M. Glass (*pro hac vice*)
(jimglass@quinnemanuel.com)
Gregory C. Wyckoff (*pro hac vice*)
(gregorywyckoff@quinnemanuel.com)
QUINN EMANUEL URQUHART &
  SULLIVAN, LLP
51 Madison Ave., 22nd Floor
New York, NY, 10010
Tel.: (212) 849-7000
Fax: (212) 849-7100
*Attorneys for Defendants Parrot S.A. and Parrot Drones S.A.S.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 31st day of October, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ B. Russell Horton*
B. Russell Horton